May I please the court, counsel? My name is Jennifer Lassie with the Office of the State Appellate Defender, and I represent the defendant appellate, Mr. Kenneth Wangler. The only issue in dispute is contained in argument one. Through the state's questioning of Officer Upchurch, and then repeatedly during his closing argument, the prosecutor told jurors that if Mr. Wangler had an innocent explanation for the injury to his hands, that he would have given that explanation to police at the time he was under arrest and being booked in the county jail. The state repeatedly emphasized that if he were innocent, he would have spoken up after arrest. Mr. Wangler's counsel was ineffective for failing to object, while the prosecutor repeatedly used post-arrest silence to create an inference of guilt. The state's brief contains no discussion of the law regarding the use of a defendant's post-arrest silence. However, since the 1976 decision in Doyle v. Ohio, it has been clear that a prosecutor cannot argue that a defendant must be guilty because he failed to give an exculpatory explanation to police after being arrested and advised to pose Miranda rights. This makes sense because due process principles don't allow police to tell a defendant that he has the right to remain silent, and then to later punish him for exercising that right by claiming that an innocent person would have spoken up. Was this objected to at the time of trial? It was not, and that is why we are arguing that counsel is ineffective for failing to object, Your Honor. How do you explain your case in light of the Supreme Court case of People v. Nitz? I mean, even if I agree with you that the state committed the error, it was awful, on the post-arrest silence, Nitz seems to be a problem for you. Your Honor, off the top of my head, I don't recall the holding in Nitz, and I don't believe the state side of it, and it's brief. All right. Okay. Well, I would ask that the presiding justice issue an order allowing both of you some time to address People v. Nitz, if you don't mind. The citation on it is 143, Illinois 2nd, 82. Order will issue allowing each of you 14 days to address that issue? Yes, Your Honor. Just to address the case as it relates to your issues. Order to allow 14 days to address People v. Nitz. Yes. Did you get the citation on it? Yes. Okay, thank you. Thank you, Justice. Thank you, Your Honor. In this case, the state did not address Doyle in any way, and I believe this should be taken as a concession that a Doyle error occurred here. Instead of addressing the use of post-arrest silence, the state argues that it needed to use post-arrest silence to poke holes in the defense's theory of the case. However, this is not a permissible use of post-arrest silence. The only time Illinois courts permit the use of post-arrest silence is where a defendant falsely claims at trial that he gave an expulsory explanation to police following arrest when he did not, or when a defendant made a prior inconsistent statement to the police after arrest. The state does not argue that either exception applies here, and neither does. Here, Mr. Wengler's theory at trial was consistent with what he told Officer Davis before his arrest, that his wife, Robin Wengler, fought with the complainant, Ms. Milligan, and that he tried to keep the two women separated. Officer Davis testified at trial that he initially responded to a different incident at the bar about a minute or two before he got the call regarding the fight with Milligan. And in the record, his police report at page C-18 shows that he was responding to a male causing problems in the Shadwells parking lot, and that he and his partner were trying to get people to leave the parking lot when they got the call about a separate incident with Milligan. And Officer Davis's police report also shows that Kenneth Wengler told police that his wife argued with Milligan about cigarettes, and that he tried to keep the two women separated. And the officer even noted that Kenneth Wengler's wife was yelling at him while he talked to the officer, telling him to keep his mouth shut. Let me ask you this. So one of the justices just asked you if there was an objection to all this. So there was none. There was none. That's why you have an ineffective assistance to counsel claim. You also have a plain error claim, right? Your Honor, I don't believe that. Just talk to me. Since there was no objection, I assume there was nothing like this raised in a post-trial motion. There was not. So we're left with plain error. We raised it solely as an ineffective assistance of counsel claim. Well, to have ineffective assistance of counsel, you're claiming that he should have objected. Correct. But we can't review it without discussing plain error, don't you think? I think a plain error argument is distinct from ineffective assistance. With ineffective assistance, Mr. Wengler has to establish that trial counsel's conduct fell below the norm and that it prejudiced his case. And the prejudice must be actual prejudice. In other words, you have to show there's a reasonable probability that but for counsel's unprofessional errors, the result of the preceding would have been different. Yes, Your Honor. And how do you do that in this case? So, Your Honor, we don't have to show that the verdict would have been a not guilty verdict. In showing actual prejudice, the question for the court is whether Mr. Wengler got a fair trial with a verdict worthy of confidence. Well, the Illinois Supreme Court says it has to show, you have to show that to show actual prejudice, there must be a reasonable probability that but for counsel's unprofessional errors, the result of the preceding would have been different. And you're right. A reasonable probability is a probability sufficient to undermine confidence in the outcome. So you don't, how do you do that here? Well, Your Honor, this was the heart of the defense's case. The argument here, trial counsel explicitly said on the record, our argument is that he had his hands injured in the fight that occurred just before this while separating men out in the parking lot. And there was evidence demonstrating that officers were initially responding to that fight. So this was the heart of the defense's case. He was not injured in this fight with Milligan. He was injured just before breaking up this fight in the parking lot. But that's an issue of the credibility of the witnesses, right? I mean, the jury, or is this a jury case? I don't remember. It was, Your Honor. It was a judge trial. But the jury was left to consider the credibility of your client's testimony. Right. The problem with the error here is that it's particularly egregious in light of these facts. The complainant, Ms. Milligan, testified that either Mr. Wengler or Robert Wengler, his wife, hit her first. She wasn't sure at trial. And she admitted at trial that she initially told police it was the wife who struck her first and knocked her to the ground. She testified at trial that she had been drinking that night. This happened at a bar. And she testified that she remembered Mr. Wengler kicking her, and she lost consciousness both times. Yeah, that's a pretty clear statement. Well, she claimed she was in and out of consciousness, and she could not really see what was happening, but she claimed she could hear. So her testimony was not overwhelming evidence of Mr. Wengler's guilt. Now, Ms. Marsh. Again, you're talking about credibility. Right, Your Honor. And I think it's important, the testimony that was given in light of these facts, and when we consider this error and how it plays into these facts, Ms. Marsh testified for the state that she saw Mr. Wengler hit Milligan first. However, this was directly contradicted by Milligan herself, who first told police that it was the wife that hit her first. So the state's own witnesses contradicted each other as to who hit Milligan. And it's important here because Robin Wengler, the wife, pled guilty to hitting Ms. Milligan, and she testified that she pled guilty because she did batter Milligan, and she testified that she acted alone. And she also testified that Mr. Wengler's only role was in trying to keep those two women separated, and that he also tried to intervene when other women began to join in the fight. Ms. Wengler, Robin Wengler testified that she was winning and other women jumped into the fight, and that's when Mr. Wengler got involved, was to separate them. But he didn't testify. He did not testify. He probably couldn't testify, is my guess. Because he got eight years and she got probation, which means if he would have testified and he had a felony, it would have come in. That is possible. I mean, that's just a guess. It's not on the record, I understand. It's not, Your Honor. But it seems like I don't see the – I'm having trouble with the burden that you have to carry, which is pretty significant. You're arguing facts, you know, and the victim says that she saw him kick her. She does. However, as noted in the reply brief, she was intoxicated. She couldn't really see what was happening. And while she claims he kicked her, this also could have been him getting involved and trying to pull women apart. And she was on the ground. So did Your Honor have any more questions? No time. And Rebecca? May it please the Court, counsel, Chelsea Casten on behalf of the State. And, First Your Honors, we just wanted to acknowledge that the State will address within 14 days the case of People v. Nitz that Your Honor asked us about. Your Honors, defense counsel in this case was not ineffective for failing to object to the State's closing argument. It's one of many judgment calls that has to be made in the course of trial. And it's easy to say now that counsel shouldn't have objected to something. Can you have ineffective assistance at counsel and it be harmless error? Your Honor, the State would hold specifically as to the question that was asked during questioning of Officer Upchurch that if it was error, that actually would have been a harmless question asked because it arose from the questions that had come directly from what defense counsel had been asking all of the police officers. It was at the cross-examination by defense counsel of Officer Davis, who was the first to testify in the case, that the issue of how defendant cut his hands was first introduced. Then you have the victim and Tracy March, who was the eyewitness in this case, testify. And then the State asked Officer Upchurch one question, which was if defendant had an explanation for the injury to his hands, which the officer said no. Then at cross-examination, defense counsel asked Officer Upchurch, you have no idea how those injuries were received, and the officer said no. And you think that was error? Your Honor, if it was error, that would have been harmless as it just arose over the course of questioning that really came from defense counsel winding up questioning his theory of the case that the defendant had somehow received these injuries from a fight earlier in the evening, which goes to the credibility of the witnesses, as Your Honor noted. What about the State's attorney in the closing argument? The closing argument had a lot of comment about his failure to say anything, and there were no objections by his counsel. That's correct, Your Honor, and if those comments were improper, it can be seen that those come directly from the prejudice that occurred to the State when the defense was allowed to bring in defendant's wife one hour before the second day of the trial with no notice and allow her to testify where the State was unable to present any rebuttal witnesses because they didn't have sufficient notice. I think there can be seen a direct link where they were. You're saying that it's okay to violate somebody's constitutional rights because the court made a prejudicial ruling toward the State? No, Your Honor, I'm saying that you can see where they might have tried to come up with something after a witness was presented by the defense after she was allowed to sit through an entire day of the trial and hear every other witness that was presented by the State and then is presented one hour before the second day of trial and they don't have any rebuttal witnesses. That being said, Your Honor, jury instructions were read to the jury, as I'm sure you noted, and not only was the jury told that they're the judges of the believability and credibility of the witnesses, but they were also told that the defendant is not required to prove his own innocence and that neither opening statement nor closing statement, if it's not based on the evidence, should be regarded. That being said, Your Honor, even if that was not enough to remedy the error, the defendant still has to meet the two-prong standard. It's not enough to just say that counsel was deficient. As you already noted, you already read the second prong of the standard. The jury has to be able to show that in this case, as a result of the deficient performance, he was substantially prejudiced in the case. Do you think this statement is prejudicial? Because this is evidently what the State's attorney said, to which there was no objection. You guys need to know this. Did he say it that night? No. Has he ever said it? Do we have anything in the reports? Anything that shows he said that? But here it is today for the first time. His wife comes in and says that's how he got injuries to his hands. Now, until I read about the wife, that is only about him not testifying or not saying anything. Post-arrest silence. Clearly post-arrest silence. Yes, Your Honor. It is improper. That being said, it's not clear when he was given his Miranda rights. And, again, the last part of that statement obviously links back to what the wife had just testified to. Well, the wife, he can't really object. I don't know that there's standing for him to object to what the prosecutor says about the wife. What do you think about that? Does the defendant have standing to object to what a prosecutor says about the wife's coming in and giving a statement for the first time? Yes, Your Honor, and they actually objected for the record to her testifying and making the statements because, again, it came in one hour before the second day of trial. No, but my question is can the defendant claim a violation of his Fifth Amendment post-arrest silence if the prosecutor is actually referring to someone else? Is there standing to do that? That's a tough question. It's an interesting question, Your Honor, because then it kind of gets into so then what kind of a witness are we going to qualify her as and then is there some kind of an exception to the witness? I'm not really sure what the answer is. I'm not sure if he has any rights to complain if a prosecutor talks about someone else. His constitutional rights go to him. Yes, Your Honor, they do. Interesting question. I just thought I'd ask. It is an interesting question, and all of this, of course, is from the closing arguments, but then when you're looking for the substantial prejudice in this case to see if he is ineffective, you have to look at the other facts in this case where you have two police officers who gave credible testimony, the first officer testifying that when he drove up, there's a woman bloody on the ground and the vehicle with defendant and his wife are driving away. Then you have the victim herself who, while she may have given conflicting testimony about who threw the first punch, she consistently said both defendant and his wife beat her and kicked her. Then you have the probably most unbiased party, Tracy March testifying, who not only tried to get the defendant off of the victim in this case, who was yelling at her for stealing a pack of cigarettes and beating her for it, but then she's also the one who had to call 911 because she couldn't get the defendant off of the victim herself. Followed by that is then the testimony of the second officer who did describe the injuries to his hands. All of this, Your Honor, has to go to was there actually substantial prejudice in closing arguments where proper jury instructions were given, and then the credibility of the witnesses is always a question for the jury. So in this case, no, Your Honor, this is not an effective assistance of counsel case, where if counsel did fail to raise an objection during the closing argument, it doesn't meet that second prong of the case to show substantial prejudice where there's so much other evidence that the state was able to present, by an overwhelming amount that, yes, the defendant did in fact commit this crime. Unless the court has any other questions. I have one question for you. Yes. On his third issue where Mr. Wengler complains that his fines should have been offset by $20, it's my understanding the state concedes that issue. Your Honor, if he did not receive credit for his pre-sentence credit, then yes, he is entitled to that. However, it's the four days, not the five, which both parties have agreed. Right. And I was going to ask her that question, but the defendant concedes the issue on the one day, and the state concedes the issue on the four days for $20. Yes, Your Honor. Okay. We would ask you to affirm the ruling of the lower court and find that counsel was not ineffective. Thank you. Thank you. Ms. Lewis. Your Honor, that last question, I just wanted to confirm that that is correct about the second issue, the one day. So it would be four days. That's okay. I'll figure. Okay. It's okay. So first I want to point out that trial counsel's questioning of the state's witnesses was distinct from what the prosecution here did. Trial counsel had Officer Davis confirm that he did not know how Mr. Wengler's hands were injured, that it was possible that they were injured from another incident, and that he did not ask Mr. Wengler. And that is distinct from asking an officer about a defendant's post-arrest silence, whereas the state was the first to introduce that Mr. Wengler did not offer an explanation. And that was from Officer Upchurch. Next, Robin Wengler's presence in the courtroom is irrelevant. Mr. Wengler had sat through the state's case in chief, and had he testified, the state still could not have used his post-arrest silence to argue his guilt. So Robin Wengler's presence in the courtroom is not dispositive of that issue and is entirely irrelevant. Next, the jury instruction did not help to minimize the prejudice from this error because the state brought Mr. Wengler's silence following his arrest into evidence. And the IPI that the state relies on says that closing arguments are not evidence. However, Mr. Wengler's post-arrest silence had been brought into evidence by the state, and the state repeatedly told jurors how it should consider that evidence. Next, standing. People v. Nolan cited in the opening brief. In that case, the Illinois Courthouse held, prosecution cannot elicit police testimony about a defendant's silence. So in that case, it wasn't just the defendant testifying and the state using his post-arrest silence to impeach him. It was the prosecutor getting testimony from police officers, just as was done here, that the defendant was silent following his arrest. So I do believe there's no standing issue present here, and the state has not argued that one exists. Next, this was not a harmless error. Trial counsel stated on the record that his defense strategy at trial, there were two things that he was going to argue. One, that Mr. Wengler did not batter Ms. Milligan. And two, that it did not occur on a public way. That was his argument, and he put that on the record. So there's no strategic reason for counsel to sit and not object while the state uses improper evidence to argue that Mr. Wengler was guilty. This post-arrest silence was inadmissible, and none of the exceptions permitting it in existed in this case. So there was no reason for counsel's failure to object. Next, on the prong of prejudice, this did prejudice Mr. Wengler and deprived him of his right to a fair trial with a verdict that we can be confident of. Because in this case, the evidence was not overwhelming. At trial, Milligan admitted that the incident had occurred a year or a year and a half before the trial and that she was unsure of what happened. She could not see. She was on the ground. But she believed that Mr. Wengler kicked her twice. However, she also claimed to lose consciousness both times. She also admitted that she had been drinking. So she was unsure of what happened, and her testimony alone was not overwhelming evidence. Next, the eyewitness, March, that testified, she was also involved in the fight towards the end. She and some other women got into the fight to break it up when Robin Wengler was on top of Milligan. And March testified that Mr. Wengler hit Milligan first. However, Ms. Wengler contradicted that by saying that Robin Wengler hit her first. And this is important because Robin Wengler testified that she alone battered Milligan. Robin Wengler, unlike Milligan and March, was not a patron of the bar. She was working there as a bartender. She was an employee at the bar. And she testified that she acted alone in battering Ms. Milligan and that she pled guilty because she was guilty. And on the stand, she almost appeared to be bragging about beating up Ms. Milligan and claimed that she was winning the fight when other women began to intervene. So the evidence here was not overwhelming. And this error went to the heart of the defense's theory of the case. And because of this, we cannot say that this is a verdict that we can be confident in the outcome. And because of this, Mr. Wengler received ineffective assistance of counsel and would respectfully request that this court reverse his conviction and remand for a new trial. Does Your Honors have any questions? I believe so. Thank you very much. We'll take it into consideration and issue a ruling in due course.